UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAIRA NALLELI MORALES SUMANO,

Petitioner,

v.

CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Acting Attorney General; Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, Immigration and Customs Enforcement; and POLLY KAISER, Acting Field Office Director, San Francisco,

Respondents.

No. 1:26-cv-04954-KES-CDB (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Doc. 1

This habeas action concerns the detention of petitioner Maira Nalleli Morales Sumano, a noncitizen who is seven months pregnant and suffers from schizophrenia and psychosis. Petitioner has presented evidence, which respondents have not contested, that given her high-risk pregnancy and her severe mental illness, her immigration detention presents a significant risk of death to her and her fetus. For the reasons explained below, the Court finds that petitioner's present detention is excessive in relation to its purpose and violates substantive due process. The petition for writ of habeas corpus is therefore granted.

## I. Background

Petitioner Maira Nalleli Morales Sumano is a Mexican citizen who has lived in the United States since she was two years old, *see* Doc. 1 at ¶¶ 27–28, although once, when she was ten years old, she voluntarily departed the United States and re-entered at a later date. *See* Doc. 6-2. When petitioner was seventeen, she was sexually assaulted. Doc. 1 at ¶ 29. She reported the assault to the police and received medical treatment. *Id.* ¶ 30. Following her sexual assault, she petitioned for U nonimmigrant status and applied for a waiver of inadmissibility. Doc. 1 at ¶ 31. In 2021, United States Citizenship and Immigration Services ("USCIS") granted her petition. *Id.* USCIS also granted petitioner work authorization and deferred action until September 12, 2025. *Id.*

Petitioner suffers from several mental illnesses, including schizophrenia, psychosis, major depressive disorder with psychotic features, depression, and anxiety. Doc. 8-1, Ex. A; Doc. 8-1, Ex. B; *see* Doc. 1 at ¶ 34. Due to her mental health issues, she has trouble understanding, communicating, and remembering basic concepts. Doc. 1 at ¶ 34. According to Dr. Apurva Bhatt, a clinical assistant professor at Stanford University School of Medicine and director of the Child INSPIRE Early Psychosis clinic at Stanford Children's Health, individuals with mental health issues like petitioner "experience delusions and/or hallucinations during depressive episodes." Doc. 8-1, Ex. B.

Petitioner has a lengthy criminal history. *See* Doc. 6-4.[1] Between December 2022 and July 2025, petitioner was convicted of four felonies and twelve misdemeanors, including felony

[1] Petitioner's felony convictions include: obstructing or resisting a police officer in violation of California Penal Code § 69(a) (two convictions), taking a vehicle without the consent of the owner in violation of California Vehicle Code § 10851(a), and assault with force likely to produce great bodily injury in violation of California Penal Code § 245(a)(4). Doc. 6-4. She has been convicted of misdemeanors including trespass in violation of California Penal Code § 602(o), disorderly conduct in violation of California Penal Code § 647(f), battery on a spouse in violation of California Penal Code § 243(e)(1) (two convictions), battery on a person in violation of California Penal Code § 242, battery on a peace officer in violation of California Penal Code § 243(b) (two convictions), refusing a chemical test in violation of California Vehicle Code § 23152(b), hit and run with property damage in violation of California Penal Code § 20002(a) (two convictions), driving under the influence in violation of California Vehicle Code § 23152(b), and driving with a suspended license in violation of California Vehicle Code § 14601.2(a). *Id.*

obstructing or resisting a police officer in violation of California Penal Code § 69(a), and misdemeanor battery on a police officer in violation of California Penal Code § 243(b). *Id.*

In 2019, petitioner gave birth to a daughter by emergency C-section. Doc. 1 at ¶ 32. Petitioner asserts that she has strong community support and sees her family regularly. *Id.* ¶¶ 33, 46. It appears that her daughter is now in her parents' custody. *See* Doc. 6-2 at 4.

On March 10, 2026, petitioner was arrested for misdemeanor offenses, including battery against a police officer. Doc. 6-4. She was detained at Santa Clara County Elmwood Correctional Complex until April 24, 2026. Doc. 6-2 at 3. Upon her release, Immigration and Customs Enforcement ("ICE") agents detained her. *Id.* She is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E).[2] *See* 8 U.S.C. § 1226(c)(1)(E) (mandating detention for any noncitizen who is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and "is charged with" or "is arrested for" any "assault of a law enforcement officer offense"); Doc. 6-2 at 2. She is now detained at California City Detention Center. Doc. 1 at ¶ 39.

Petitioner was 17 weeks pregnant when she was detained by ICE, and she is currently approximately 30 weeks pregnant. Doc. 1 at ¶¶ 4–5. Petitioner's filings include letters from Dr. Bhatt and Dr. Stacie Geller, the Director of the Center for Research on Women and Gender at the

---

[2] Respondents argue that petitioner should be required to exhaust her administrative remedies by requesting a *Matter of Joseph* hearing with an immigration judge to determine whether she is subject to 8 U.S.C. § 1226(c). *See* Doc. 6 at 3–4. At a *Matter of Joseph* hearing, a "detainee may avoid mandatory detention by demonstrating that [she] is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that [she] is in fact subject to mandatory detention." *Demore v. Kim*, 538 U.S. 510, 514 (2003). This exhaustion requirement is prudential rather than jurisdictional, and it may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Here, exhaustion of administrative remedies would be futile because, even if the immigration judge were to determine that petitioner was not subject to mandatory detention under 8 U.S.C. § 1226(c), she would be bound by the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), that mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens in petitioner's circumstances. *See Lopez Lopez v. Warden*, No. 1:26-CV-03556-DAD-CKD (HC), 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026) (waiving exhaustion requirement as futile were the government argued that petitioner should be required to exhaust administrative remedies by requesting a *Matter of Joseph* hearing while maintaining that petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)).

University of Illinois at Chicago. Doc. 8-1, Exs. A, B. Based on a review of petitioner's records, both Dr. Geller and Dr. Bhatt conclude that petitioner has an extremely high-risk pregnancy, including due to her mental health issues, and that if she remains detained, there is a significant risk of death to petitioner and her fetus. *See* Doc. 8-1, Ex. A; Doc. 8-1, Ex. B. "Without intervention and release to her family, her condition will likely deteriorate, leading to probable risk of mortality and morbidity for mother and child." Doc. 8-1, Ex. A; *see* Doc. 8-1, Ex. B ("From my review of Cal City's medical records and in my professional opinion, Ms. Sumano is not getting the proper treatment that she needs and without intervention, her condition will deteriorate or worsen and can result in her death or the death of her fetus.").

Petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. She argues that her detention violates substantive due process and ICE Directive 11032.4. *See* Docs. 1, 2. Respondents filed a response, Doc. 6, and petitioner filed a reply, Doc. 8. Despite being provided an opportunity to file a sur-reply, respondents have not submitted any evidence disputing Dr. Geller's and Dr. Bhatt's evaluations of petitioner's health risks. *See* Doc. 9.

## II. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A habeas petitioner must prove by a preponderance of the evidence that she is entitled to relief. *See Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. Discussion

Under the Due Process Clause, a person may not be punished unless she is tried and found guilty of a crime. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979) (citing *Ingraham v. Wright,* 430

U.S. 651, 671–672 n. 40, 674 (1977); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 165–167, 186 (1963); *Wong Wing v. United States,* 163 U.S. 228, 237 (1896)). This principle applies equally to citizens and non-citizens. *Compare Ingraham,* 430 U.S. at 671–672 n. 40, 674, *with Wong Wing,* 163 U.S. at 237–38. That is so because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).[3]

Civil "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). But "civil detainees retain greater liberty protections than individuals detained under criminal process." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321–24 (1982)). The Ninth Circuit has held that "[a]t a bare minimum," a person "detained under civil process—like [a person] accused but not convicted of a crime—cannot be subjected to conditions that 'amount to punishment.'" *Id.* Such "punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless 'excessive in relation to the alternative purpose,' or 'are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'"[4] *Id.* (quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th

---

[3] Petitioner also claims that her detention violates ICE Directive 11032.4. That Directive states that "ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant . . . unless release is prohibited by law or exceptional circumstances exist." As petitioner is statutorily subject to detention pursuant to § 1226(c)(1)(E), she has not established that ICE violated Directive 11032.4 in detaining her. But as addressed below, petitioner has established that she is entitled to relief under the Due Process Clause.

[4] Respondents do not address this standard in their opposition. Instead, they argue that *Demore v. Kim*, 538 U.S. 510 (2003), precludes petitioner's due process claim. Doc. 6 at 4–7. This argument is not persuasive. *Demore* upheld the constitutionality of § 1226(c) on a facial challenge. *See Demore*, 538 U.S. at 513. A facial challenge requires a plaintiff to show that a statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge requires a plaintiff to show only that "the application of the statute to a specific factual circumstance" is unconstitutional. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). As other courts have explained in considering *Demore*, its conclusion that § 1226(c) is constitutional in some of its applications "does not mean that the Court does not have the power to grant petitions for habeas corpus raising

Cir. 2004), and *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1484 (9th Cir. 1993)). Petitioner does not argue that her detention is intended to punish her, *see* Docs. 1, 8; the issue is whether her detention is excessive in relation to the government's purpose of protecting the community and preventing her from fleeing. *See Zadvydas*, 533 U.S. at 690 (identifying prevention of flight risk and danger to the community as the two legitimate regulatory goals of immigration detention).

Courts in this circuit have held that immigration detention is excessive in relation to its purpose when the conditions in a detention facility endanger a detainee's life. Many of these cases evaluated the risks that the COVID-19 pandemic presented to those in detention facilities. *Perez v. Wolf*, for example, involved a detainee who had asthma, a condition that made him "significantly more likely to have a severe illness or die" if he contracted COVID-19. *Perez v. Wolf*, 445 F. Supp. 3d 275, 292–93 (N.D. Cal. 2020). The court noted that social distancing was the one of the most important measures employed to stop the spread of COVID-19, but "the structure of detention facilities" prevented detainees from social distancing. *See id.* at 293–94. Due to the difficulty of implementing social distancing measures at the detention facility and the life-threatening harm that petitioner would face if he contracted COVID-19, the court found that the petitioner's detention was excessive in relation to its purpose. *Id.* at 292–95. It did so despite the fact that an immigration judge had denied the petitioner release on bond, finding that he was a danger to the community, and despite the fact that the *Perez* court upheld the immigration judge's

---

*as-applied* constitutional challenges to [] detention . . . ." *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208–10 (3d Cir. 2020) (noting that *Demore* involved a facial challenge and did not foreclose as-applied challenges); *Black v. Decker*, 103 F.4th 133, 149 & n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c) . . . [and] said nothing about whether due process may . . . require a hearing [in other circumstances]."). *Demore* does not foreclose an as-applied challenge to the constitutionality of § 1226(c). The Supreme Court also confirmed that its decision in *Nielsen v. Preap* "does not foreclose . . . constitutional challenges to applications of [§ 1226(c)] as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *cf. Black*, 103 F.4th at 149 & n.22. Petitioner brings an as-applied challenge to her detention based on her unique circumstances—including that she is in a high-risk pregnancy and suffers from severe mental illness, and that her detention and lack of adequate treatment have created a significant risk of death. *Demore* did not address such an as-applied challenge.

danger finding. *Id.* at 280–83, 287–91.

Other courts have reached similar conclusions in cases involving petitioners with medical needs that made them particularly vulnerable to COVID-19. *See, e.g.*, *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal. Apr. 20, 2020) (ordering release of detainee with hypertension during COVID-19 pandemic, despite IJ's finding that he was a danger due to convictions for armed robbery, battery resulting in serious bodily injury, and other offenses); *Bent v. Barr*, 445 F. Supp. 3d 408, 418 (N.D. Cal. 2020) (ordering release of 58-year-old petitioner with asthma and with 2006 attempted murder conviction during COVID-19 pandemic); *Ortuño v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 1701724, at *3–4 (N.D. Cal. Apr. 8, 2020) (ordering release of four petitioners with diabetes, asthma, and other conditions that made them susceptible to serious illness or death if they contracted COVID-19); *Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226, 1251 (W.D. Wash. 2020) (ordering release of elderly petitioner with history of hypertension and respiratory infections during COVID-19 pandemic); *Doe v. Barr*, No. 20-CV-02263-RMI, 2020 WL 3639649, at *7 (N.D. Cal. July 6, 2020) ("[B]ased on the above-described evidence, it appears highly likely that Petitioner's mental health conditions would be so aggravated by any continued detention that the clear result would be his untimely death by either suicide or COVID-related complications."); *see also Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530 (W.D. Wash. Feb. 13, 2026) (ordering release of detainee after government repeatedly failed to provide him with adequate health care).

Although the cases mentioned above dealt with different circumstances than those presented here, they demonstrate that detention may be excessive in relation to a legitimate purpose if the conditions at a detention facility threaten a detainee's life. The record in this case shows that petitioner's detention presents a significant risk of death to both her and her fetus, given the circumstances of petitioner's high-risk pregnancy, her serious mental health issues, and the conditions and lack of adequate treatment within the detention facility.

The petition quotes extensively from a May 2026 report from the California Department of Justice. That report concluded, following on a November 2025 site visit, that California City Detention Facility has "crisis-level health care understaffing" for its nearly one thousand

detainees. Cal. Dep't of Justice, *Immigration Detention in California: A Review of Conditions of Confinement* 9 (May 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf. "For example, there was only one physician providing care, and no backup physician[.]" *Id.* "Cal City began receiving female detainees before obtaining basic supplies for providing reproductive health care, contrary to multiple ICE standards," and it "had not made referrals for offsite gynecology care." *Id.* at 166. Numerous other "records and detainee interviews also revealed multiple instances of failures to give detainees access to outside specialists." *Id.* at 9. And of particular concern here, the facility "appeared not fully equipped to work with patients with severe mental health disorders." *Id.* at 166. Respondents have not disputed these quoted statements or provided any evidence that conditions have improved since the California Department of Justice's November site visit. *See* Docs. 5, 9.

Petitioner also submits a letter from Dr. Stacie Geller, the Director of the Center for Research on Women and Gender at the University of Illinois at Chicago, which states in relevant part:

> After careful review of Ms. Sumano's medical records, I determined that she has an extremely high-risk pregnancy. Ms. Sumano has been diagnosed with severe depression and anxiety, psychosis, substance use disorder, history of trauma and schizophrenia. These conditions are all major risk factors for maternal morbidity and mortality (pre-eclampsia, eclampsia diabetes, suicide risk) as well as fetal and neonatal morbidity and mortality (including preterm labor, low birthweight, small for gestational age, and possible anomalies).
>
> Her placement in an ICE facility . . . puts Ms. Sumano and her baby at very high risk of death. The leading causes of maternal and subsequent neonatal death in the US are behavioral and mental health conditions without adequate treatment. This is especially true for women in detention. Ms. Sumano's medical records suggest that she is not receiving all appropriate medical tests, treatment for her psychosis and depression and appropriate fetal monitoring for her baby. She absolutely requires high risk care with a Maternal Fetal Medicine specialist on a frequent basis and family and community support to facilitate her receiving culturally appropriate and best evidenced based medical care given the complexity of her health. In my opinion, this cannot happen in an ICE detention facility.
>
> In conclusion, from my review of Cal City's medical records and in my professional opinion as someone who has reviewed and assessed similar cases of high-risk pregnant women and particularly high-risk women in detention, Ms. Sumano's detention prevents her from getting the appropriate and proper treatment and care that she needs.

> Without intervention and release to her family, her condition will likely deteriorate, leading to probable risk of mortality and morbidity for mother and child.

Doc. 8-1, Ex. A. The Court provided respondents an opportunity to address Dr. Geller's assessment or to submit evidence on this issue, *see* Doc. 9, but they did not do so.

Petitioner also relies on an assessment by Dr. Apurva Bhatt, a clinical assistant professor at Stanford University School of Medicine and director of the Child INSPIRE Early Psychosis clinic at Stanford Children's Health. *See* Doc. 8-1, Ex. B. Dr. Bhatt explains that, "[d]ue to her conditions (being pregnant and living with Major Depressive disorder with psychotic features)," petitioner has a high-risk pregnancy and requires intensive care. *Id.* "Psychotic features significantly elevate safety risks during depressive episodes (namely danger to self and to the fetus) and require very close monitoring and treatment with specialists[.]" *Id.* This includes weekly psychotherapy, regular visits with specialized medical professionals, access to a variety of high-quality food, a low stress environment, and family support to navigate medical choices. *Id.* Dr. Bhatt explains that, according to petitioner's records, petitioner has not received this care in detention. *Id.*

Dr. Bhatt also explains that the nature of detention itself has worsened petitioner's condition and amplifies the risks of serious harm. "Due to her conditions (being pregnant and living with Major Depressive disorder with psychotic features), Ms. Sumano requires . . . a low stress environment to ensure the health of her and her fetus." *Id.* California City Detention Center is not such an environment; it "is a former prison" where "[d]etainees are forced to spend unnecessarily long periods of time locked down in their cells, as the facility conducts seven headcounts throughout the day[.]" Doc. 1 at ¶ 56. Petitioner's records show that detention has caused her to experience "psychosis (hallucinations and disorganized thinking observed by multiple records . . . )," as well as "symptoms of depression (low mood, crying spells, difficulty with thinking/making decisions, fatigue/low energy)." Doc. 8-1, Ex. B. Petitioner's "cellmate reported that she once observed Ms. Sumano [] hitting her head on the wall." Doc. 1 at ¶ 43.

Dr. Bhatt also explains that petitioner's separation from her family elevates the risk of complications. "[S]he is at risk of endangering herself through not being able to care for herself

and adequately accept treatment or advocate for her needs . . . ." Doc. 8-1, Ex. B. "Family support is also critical to mitigate the stress of pregnancy, which in and of itself, often causes flares of depression and psychosis in people with MDD with psychotic features." *Id.* In detention, she "lacks the social support she needs to manage her mental health and her pregnancy." Doc. 1 at ¶ 46.

These concerns are compounded by the fact that "her daily behavior logs do not indicate she is accepting food or water, which is highly concerning given she is also pregnant." Doc. 8-1, Ex. B. "Poor intake can lead to malnutrition and negative medical consequences, especially in a pregnant individual who may be uniquely susceptible to dehydration and malnutrition." *Id.* Her "poor intake, [] agitated behaviors, [and] disorientation" suggest that she may be "developing a life-threatening condition called Catatonia." *Id.* This concern has "not been evaluated for or addressed (per records)." *Id.*

Dr. Bhatt concludes that:

> Based on my review of her records, I believe that Ms. Sumano cannot access the standard of care for her current conditions while in detention. She needs more frequent specialist visits which per my review of records, she is not receiving while in ICE custody. From my review of her records, Ms. Sumano is not receiving necessary obstetrical care for this high-risk pregnancy, proper weekly monitoring of vitals and weight, or serial ultrasounds, and is being prescribed medication that has high teratogenic risk to her fetus despite numerous safer alternatives. . . . From my review of Cal City's medical records and in my professional opinion, Ms. Sumano is not getting the proper treatment that she needs and *without intervention, her condition will deteriorate or worsen and can result in her death or the death of her fetus*.

Doc. 8-1, Ex. B (emphasis added).

Respondents have not disputed any part of Dr. Geller's or Dr. Bhatt's assessments. *See* Doc. 9 and docket. They do not dispute the doctors' conclusions that petitioner and her fetus face a significant risk of death if petitioner remains detained. Doc. 8-1, Ex. A ("Without intervention and release to her family, [petitioner's] condition will likely deteriorate, leading to probable risk of mortality and morbidity for mother and child."); Doc. 8-1, Ex. B ("[W]ithout intervention, her condition will deteriorate or worsen and can result in her death or the death of her fetus."); *see* Doc. 9. Nor have respondents pointed to any intended or potential corrective actions to address

the serious medical concerns identified in petitioner's filings. *See* Doc. 9.

Instead, respondents argue that a detainee cannot challenge her conditions of confinement in a habeas case, *see* Doc. 6 at 8–9, relying on *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023). But *Pinson* did not hold that the conditions of a detainee's confinement can never be challenged through a habeas action.[5] *See Pinson*, 69 F.4th at 1075. Rather, it held that, in the context of that case, the petitioner's challenge to his conditions of confinement in a federal correctional institution, where the petitioner had failed to show that relief short of release was inadequate, did not sound in habeas and should have been brought in a civil rights action. *Id.* at 1073–75.

Here, in contrast, petitioner is a civil detainee and has documented the significant risk of death that she and her fetus currently face due to her high-risk pregnancy and the deficient care in detention. And respondents have failed to contest this evidence. As another court noted in rejecting a similar argument by the government, "[f]or civil detainees like Mr. Doe, the Ninth Circuit has held that conditions of confinement are a relevant factor in determining whether civil detention remains civil rather than punitive (and therefore permissible)." *Doe v. Becerra*, 723 F. Supp. 3d 688, 691 n.1 (N.D. Cal. 2024). "Because a person in punitive civil detention is therefore 'in custody in violation of the Constitution or laws or treaties of the United States,' a petition seeking release from the unlawful detention sounds squarely in habeas." *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *8 (W.D. Wash. Feb. 13, 2026) (quoting 8 U.S.C. § 2241(c)(3)); *see also Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1226–28 (W.D. Wash. 2026) (distinguishing *Pinson*). Respondents' argument that conditions of confinement may never be addressed through habeas is unpersuasive.

---

[5] *Pinson* noted: "[W]e recognize that the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus. . . ." *Pinson*, 69 F.4th at 1075. "We conclude that [the petitioner] has failed to allege facts to support his legal contention [that his conditions of confinement may be addressed through habeas] . . . ." *Id.* "[We] do not attempt to circumscribe the reach of habeas relief . . . [b]y rejecting [the petitioner's] claims, [and] we do not suggest the proper resolution of other habeas claims[.]" *Id.* at 1075 & n.15; *see also Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement.") (quoting *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979)).

"Release from confinement" is the traditional remedy for claims at the core of habeas corpus. *Pinson*, 69 F.4th at 1070–71. A claim at the core of habeas corpus is one that would "necessarily imply the invalidity of" imprisonment. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997). "[T]he Supreme Court has explicitly held that even when a plaintiff seeks money damages—a remedy unavailable to a habeas claimant—the cause of action nonetheless sounds in habeas if 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction.'" *Pinson*, 69 F.4th at 1070 (quoting *Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994)). In *Pinson*, the Ninth Circuit concluded that "the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested." *Id.* at 1072. A "successful claim sounding in habeas necessarily results in release." *Id.* at 1073.

Petitioner's claim sounds in habeas because the undisputed allegations in the petition demonstrate that release is legally required. Given her severe mental illness and high-risk pregnancy, and the specific conditions of her detention, her present detention pending civil immigration proceedings presents an unwarranted risk to petitioner and her fetus. *See* Doc. 8-1, Ex. A ("Her placement in an ICE facility . . . puts Ms. Sumano and her baby at very high risk of death."). Petitioner's detention has exacerbated her mental health condition, leading to heightened safety risks. *See* Doc. 8-1, Ex. B ("Psychotic features significantly elevate safety risks during depressive episodes (namely danger to self and to the fetus).") Though perhaps some of the conditions which place her life in danger, such as the lack of "adequate nutrition," *see* Doc. 1 at ¶ 45, could be remedied without her release, the record reflects that it is her present detention itself that poses much of the risk to the life of petitioner and her fetus. Because petitioner's claim leads to the conclusion that she must be released, petitioner's claim sounds in habeas.

In the specific circumstances of this case—petitioner's high-risk pregnancy, her severe mental health condition, and the unrebutted evidence that petitioner's detention presents a significant risk of death if she remains detained, *see* Doc. 8-1, Ex. B (noting a "probable risk of mortality [or] morbidity for mother and child")—the Court finds that petitioner's present detention is excessive in relation to its purpose, in violation of the Due Process Clause. The legitimate purposes of petitioner's detention are outweighed by the significant, documented risk

that petitioner or her fetus may die if she remains detained. *Cf. Perez*, 445 F. Supp. 3d at 292–93 (ordering petitioner's release after upholding IJ's dangerousness finding); *Singh*, 2020 WL 1929366, at *10 (ordering release of detainee with hypertension during COVID-19 pandemic, despite IJ's finding that he was a danger due to convictions for armed robbery, battery resulting in serious bodily injury, and other offenses); *Bent*, 445 F. Supp. 3d at 418 (ordering release of 58-year-old petitioner with asthma, and with 2006 attempted murder conviction, during COVID-19 pandemic).

**IV. Conclusion and Order**

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED.

Respondents are ORDERED to release petitioner within 48 hours. Respondents may require petitioner to comply with reasonable monitoring and reporting requirements upon her release.

The Clerk of Court is directed to close this case and enter judgment for petitioner. The Clerk is directed to serve California City Detention Center with a copy of this order.

IT IS SO ORDERED.

Dated: July 28, 2026

UNITED STATES DISTRICT JUDGE